UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MARIANNE MAURER, | ) | No. ED CV 06-00052-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | (Social Security Case) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified Administrative Record ("AR").  After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

The AR indicates that Plaintiff initially filed an application

1    for Supplemental Security Income ("SSI") in 2001, which ultimately

2    resulted in an unfavorable decision by an Administrative Law Judge

3    ("ALJ") in August 2003. (AR 46-49.)   The ALJ found Plaintiff to be

4    limited to a range of light work. (Id.)  Plaintiff filed a request for

5    review to the Appeals Council, which remanded the matter with

6    instructions. (AR 101-103.)   Upon remand, the ALJ was ordered to

7    evaluate Plaintiff's obesity in accordance with Social Security Ruling

8    ("SSR") 02-01p; to evaluate the written statements provided by third

9    party lay witnesses; to obtain supplemental evidence from a vocational

10   expert ("VE") and to utilize hypothetical questions which reflect the

11   specific capacities/limitations established by the record as a whole.

12   (AR 103.)

13       The hearing on remand occurred on April 7, 2005 before a new ALJ

14   (AR 548-566), at which time Plaintiff appeared with counsel and

15   testified.  In addition, testimony was taken from a VE.  This resulted

16   in a second unfavorable decision issued on June 21, 2005. (AR 13-24.)

17   The ALJ found certain severe impairments (AR 23, Finding 2); that the

18   impairments did not meet or equal any of the Listings; determined

19   Plaintiff's residual functional capacity ("RFC") prior to and after

20   July 22, 2003; determined that Plaintiff has no past relevant work;

21   and at the last step in the sequential evaluation process, determined

22   that based on Plaintiff's RFC, there are available jobs and she is not

23   disabled. (AR 23.)

24       In her first issue, Plaintiff asserts that the ALJ did not

25   properly consider the available medical evidence in the record.

26   Plaintiff highlights x-rays of her lumbar spine and her knee and hip

27   with accompanying comments diagnosing moderate degenerative disc

28   disease.  Certainly, the ALJ did not ignore these medical records in

view of the fact that he found a severe impairment of degenerative disc disease. (AR 23, Finding 2.)  There is no requirement in the law or in any regulation which governs the Commissioner which mandates specific discussion of every item of medical evidence.  Were that the case, a detailed AR such as the one in this case would generate a correspondingly lengthy written decision.  In addition to these citations to the record, Plaintiff notes such matters as shoulder pain reported by her on May 3, 2004. (Joint Stipulation ["JS"] at 5, citing AR 519.)  While the record does indicate such a complaint, it was three days in duration, and there is no subsequent medical evidence that this condition persisted.  Temporary or passing symptoms are not the basis for a finding of disability.  The same comment holds true for a number of other citations to the record set forth by Plaintiff in her portion of the JS. (See JS at 5.)

Plaintiff asserts that her "treating physician" found that she required the use of a cane for assistance in ambulation greater than two yards. (JS at 4, citing AR 397.)  Plaintiff is referring to a report concerning her musculo-skeletal system prepared by Dr. Guion, on April 10, 2002 (AR 396-397).  While Dr. Guion did assess that Plaintiff requires a cane for ambulation for both long distances and distances greater than two yards (AR 397), the ALJ rejected this conclusion.  Dr. Guion's report does not contain objective findings consistent with the requirement of use of a cane for ambulation. Neurologically, he found normal sensation, reflex and motor control, no atrophy, no disorganization of motor functions, and a normal gait. (AR 396.)  Further, as the ALJ noted in his decision, when Plaintiff was examined during a consultative examination ("CE") on February 7, 2005 (AR 522-527), Dr. Tamayo's extensive physical examination

1  revealed no limitations or abnormalities. Plaintiff had a normal

2  gait, normal range of motion, no tenderness or spasm during her back

3  examination, normal range of motion, normal straight leg raising, lack

4  of inflammation or tenderness in the joints of the upper extremities

5  and a normal range of motion, and no inflammation or tenderness and a

6  normal range of motion in her lower extremities. Neurological

7  examination was normal, including full motor strength throughout. (AR

8  526.) Plaintiff indicated she forgot to bring her cane to the

9  examination, but this did not interfere with her ability to

10 participate in the examination. (AR 523, 18-19.)

11      Plaintiff also asserts that the ALJ ignored additional diagnoses

12 from another treating physician, Dr. Girgis. (See JS at 5, AR 488-

13 490.) But it is clear that Dr. Girgis was not Plaintiff's treating

14 physician. Rather, as the Commissioner correctly points out in her

15 portion of the JS, Dr. Girgis simply examined Plaintiff during her

16 hospitalization in 2003 for gastric bypass surgery. (See AR at 486-

17 487.) This does not comply with the extent or purpose of treatment

18 which characterizes a treating source. (See 20 C.F.R. §416.927 (2000);

19 20 C.F.R. §§404.1502, 416.902 (2006).

20      The ALJ also noted that the medical reports uniformly document

21 that Plaintiff had an excellent recovery with no functional

22 limitations observed after her gastric bypass surgery. (AR 18, 484,

23 495.)

24      In considering the medical evidence, the ALJ substantially relied

25 upon the CE of Dr. Tamayo. (AR 18-19.) Based on this evidence, the

26 ALJ determined that following her gastric bypass surgery in July 2003,

27 Plaintiff did not have functional limitations. (AR 19-21.)

28 Furthermore, there is no evidence in the record which would disturb

4

1  the prior ALJ's finding that before her gastric bypass surgery,
2  Plaintiff was limited to light work with no limitations. (AR 21.)  For
3  these reasons, the Court denies Plaintiff's first issue.

4      Plaintiff's second issue consists of a contention that the ALJ
5  did not properly assess her credibility with regard to her subjective
6  complaints, and did not consider and assess third party statements of
7  record by Plaintiff's son and her sister. (JS at 9.)  The Court will
8  briefly summarize the applicable law regarding credibility assessment
9  before analyzing the particular issue in this case.

10      If the record establishes the existence of a medically
11  determinable impairment which could reasonably give rise to the
12  symptoms reported by a claimant, then the ALJ must make a finding
13  regarding credibility of the claimant's statements about these
14  symptoms and their functional effects.  See SSR 96-7p (1996); Smolen
15  v. Chater 80 F.3d 1273, 1281 (9th Cir. 1996).  Credibility may not be
16  completely impugned solely because it is not substantiated
17  affirmatively by objective medical evidence.  See SSR 96-7p; Light v.
18  Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  In
19  addition, unless an ALJ makes a finding that a claimant is malingering
20  based on affirmative evidence, then the ALJ may only find the claimant
21  to be not credible by making specific findings as to credibility and
22  stating clear and convincing reasons for each. (See Smolen, 80 F.3d at
23  1283-84.)

24      Plaintiff asserts, generally, that the ALJ has failed to specify
25  the particular allegations which were found to be not credible, and
26  also, that the decision does not reflect proper application of the
27  factors mandated by SSR 96-7p.  The record, however, indicates that
28  the ALJ considered a number of evidentiary issues in reaching his

determination.  For example, the ALJ noted that Plaintiff asserted she suffered from constant pain during prolonged standing, sitting, or even lying down.  She takes a variety of pain medications but asserts that they only partially help.  At the hearing, she testified that she takes a number of medications for anxiety and depression which cause her extreme fatigue. (AR 551.)  Plaintiff testified that she has passed out unconscious four times (AR 555), and told her doctor about it.  She asserted that she leaves the house only once a month to go grocery shopping. (AR 556.)

The ALJ noted that despite Plaintiff's claim that she had reported her symptoms of constant fatigue to her physicians, there is simply nothing in the record to substantiate that from any medical source.  Similarly, despite her claim that she has lost consciousness four times, and that her legs "give out," the ALJ again noted that there is nothing in the medical record to support these assertions.  Her claim that she needs a cane to ambulate was contradicted by the fact that, supposedly because of forgetfulness, she did not bring her cane to the examination by Dr. Tamayo, and during that examination, she was observed to have no ambulatory limitations.

Although Plaintiff testified as to persistent and unrelenting fatigue from taking her medications for depression, she made no mention of that during her examination by Dr. Tamayo. (See AR at 523.)

The ALJ noted that if, indeed, Plaintiff has been suffering severe side effects from her medications, her physician likely would have changed these medications in order to treat her condition without the attendant side effects.

The ALJ noted that Plaintiff renewed her California drivers license in 2004 but admitted during her testimony that she failed to

tell the Department of Motor Vehicles about her alleged lapses of consciousness. One cannot fault the ALJ for noting that, "If she is in fact having such lapses, she should surrender her drivers license." Lack of truthfulness on such a critical issue is clearly a subject relevant to credibility assessment.

Plaintiff's assertions that she has "no strength" are belied by the results of Dr. Tamayo's neurological examination which revealed full motor strength symmetrically. (See AR at 526.)

Plaintiff's assertions of chronic depression and anxiety are, again, rendered suspect by the fact that she has never sought mental health care or treatment, and there is no indication in the record that she is unable to obtain such care under her medical insurance. At the hearing, Plaintiff asserted that it was only because of transportation problems that she has never seen a psychiatrist. (See AR at 557.) This is a suspect claim, in view of the fact that she renewed her California drivers license in 2004, and she does get help going to shop and to see her doctor. Lack of mental health care or treatment is a relevant factor for credibility assessment when the claimant is aware of such a condition, as is the case here. All in all, the Court finds that the ALJ's credibility assessment is well supported.

Plaintiff asserts that the ALJ failed to discuss the lay witness testimony. In fact, he did refer to the statement of her son (AR 20, 191-196). The ALJ indicated that he was placing greater weight on the reports of the treating and examining sources. (Id.) It is correct that the ALJ did not mention the written statement of Plaintiff's sister (see AR at 154-159); however, Plaintiff's sister conceded that she does not live with her or see her every day, while Plaintiff does

1   live with her son.  Moreover, the reports of both her son and her
2   sister are consistent in their contents.  Any error, therefore, in the
3   ALJ's failure to mention the third party statement of Plaintiff's
4   sister must be considered harmless.

5   Plaintiff's final issue concerns the testimony of the VE, and her
6   assertion that the hypothetical question posed to the VE was
7   incomplete because it failed to consider all of Plaintiff's relevant
8   limitations.  According to Plaintiff, these limitations include the
9   requirement that she must utilize a cane for ambulation, and her
10  inability to sustain an eight-hour workday and a 40-hour work week due
11  to pain and fatigue.  (JS at 14.)   It is hornbook law that a
12  hypothetical question must incorporate all found limitations.  See
13  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002).  The Court has
14  already addressed Plaintiff's claim that she requires a cane for
15  ambulation and found it to be unsupported.  Similarly, her asserted
16  inability to work full-time is not a limitation which is supported by
17  the evidence.

18  Plaintiff asserts, finally, that the VE's failure to identify the
19  DOT number appellations corresponding to the job descriptions renders
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

the decision reversible.  There is, however, no such requirement.  <u>See</u>
<u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995).

For the foregoing reasons, the decision of the Commissioner will
be affirmed.

**IT IS SO ORDERED.**

DATED: __November 27, 2006__

                                        _____/s/_____
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE